IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH ANN HOUSE,

              Plaintiff,

v.                                        OPINION and ORDER

ANDREW SAUL,                             20-cv-518-jdp
    Commissioner of the Social Security Administration,

              Defendant.

---

Plaintiff Elizabeth Ann House seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding House not disabled within the meaning of the Social Security Act. House contends that administrative law judge (ALJ) Guila Parker erred in numerous ways, but most of the alleged errors relate to the same question: whether the ALJ adequately explained the reasoning for her conclusions. The court agrees with House on three points: (1) the ALJ failed to support her finding that House could perform sedentary work; (2) the ALJ failed to adequately address House's allegations of fatigue; and (3) the ALJ failed to explain why she was discounting a portion of an examining psychologist's opinion. The court will remand the case for reconsideration of those matters. The hearing scheduled for April 22, 2021, is canceled.

ANALYSIS

House sought benefits based on physical and mental impairments, alleging disability beginning September 1, 2015, when she was 22 years old. R. 27.[1] In a March 2019 decision,

---

[1] Record cites are to the administrative transcript located at Dkt. 17.

the ALJ found that House suffered from four severe impairments: (1) lumbar facet arthropathy; (2) obesity; (3) anxiety; and (4) depression. R. 47. After finding that none of these impairments were severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to House the residual functional capacity (RFC) to perform sedentary work with additional mental, environmental, and physical restrictions. R. 29–30. Based on the testimony of a vocational expert (VE), the ALJ found that House could not perform her past work, but that she could perform work in jobs available in the national economy, and thus she was not disabled. R. 36–37. The Appeals Council declined review. R. 1–3. House now appeals to this court.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## A.  Physical limitations

In addition to finding that House could perform sedentary work, the ALJ included the following physical restrictions in the RFC:

- no climbing ladders, ropes, or scaffolds;
- occasional stooping, kneeling, and crouching;
- no unprotected heights or dangerous machinery;
- no concentrated exposure to wetness;

- no more than moderate noise intensity.

House says that the ALJ failed to adequately explain the following aspects of the RFC:

- why the evidence supported a finding that House could perform sedentary work;

- why the evidence supported a finding that House could stoop occasionally;

- why the RFC didn't include a limitation for grip strength;

- how House's obesity combined with her lumbar spine impairment affected her limitations;

- how a restriction on working in hazardous conditions accommodated House's fatigue; and

- why the evidence supported a finding that House could occasionally lift and carry up to 10 pounds.

1. **Sitting**

The ALJ's finding that House could perform sedentary work included an implicit finding that House could sit for six hours of an eight-hour workday. *See* SSR 96-9p; *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). House says that the ALJ failed to explain how she made the finding about House's ability to sit in light of: (1) House's testimony that she couldn't sit for more than two hours a day; (2) House's severe impairments of lumbar disc disease and obesity; (3) the ALJ's decision to credit House's allegations about her limitations in walking and standing; and (4) evidence of lumbar tenderness and limited range of motion.

The court concludes that the ALJ failed to build a logical bridge between the evidence and her finding that House could sit for six hours of an eight-hour workday. There is virtually no discussion in the decision about House's ability to sit for an extended period. In summarizing her findings, the ALJ wrote:

> Overall, the undersigned finds the claimant's allegations of back pain are well supported by the medical evidence and other

3

> evidence of record, but not to a disabling degree. Given the number of RFA [radio frequency ablation] procedures, continued pain, obesity, and physical examinations revealing tenderness and decreased range of motion, the undersigned finds it reasonable to reduce the claimant to a sedentary level of work with additional limitations . . .

R. 32. In other words, the ALJ found significant evidence supporting House's allegations but didn't believe it was enough to show disability. But the ALJ must provide more than a bottom line, a point the court of appeals has made numerous times. *See, e.g., Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Here, the ALJ didn't rely on an expert opinion to support her finding that House could sit for at least six hours, and she didn't explain why other evidence supported that finding or why she didn't find House's testimony on that question credible.

The commissioner says that the ALJ "spent four-plu[s] pages analyzing evidence." Dkt. 21, at 20. But the commissioner doesn't actually point to any analysis in those four pages. Instead, the commissioner pulls statements from the ALJ's summary of the evidence. The ALJ didn't tie any of the cited observations to a finding in her decision. But even if the court were to assume that these statements were the basis for the ALJ's finding that House could perform sedentary work, they wouldn't qualify as substantial evidence.

First, the ALJ wrote that House reported "feeling better" with treatment. R. 31 (citing R. 370, 376, 382, 869, 934). But if a claimant has improved, that simply raises the question: an improvement compared to what? *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014 ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."). As even the ALJ acknowledged, House continued to suffer from lower back pain. In any event, House's

ability to sit for an extended period wasn't considered in any of the records cited by the ALJ, so they aren't probative.

Second, the ALJ observed that examinations showed that House had a normal gait and station. But neither the ALJ nor the commissioner explain how those findings are related to House's ability to sit for an extended period.

Third, the ALJ observed that House's MRI was "essentially unremarkable." R. 17. But the ALJ also acknowledged that House's examinations consistently revealed lumbar tenderness and reduced range of motion. The ALJ didn't explain why the MRI was more persuasive than the numerous examinations. In any event, it is well established that an ALJ may not discredit a claimant's subjective complaints simply because objective evidence is lacking. *Israel v. Colvin*, 840 F.3d 432, 440–41 (7th Cir. 2016). And the ALJ didn't provide any reasons why House's subjective complaints weren't credible.[2]

The commissioner points out that House gave different answers when describing how long she could sit. At the administrative hearing, she said that she couldn't sit for more than 15 to 20 minutes before needing to get up or for more than two hours over the course of a workday, R. 61; in her function report (from two years earlier), she wrote that she could sit for one hour "without a break." R. 300. If the ALJ had relied on this discrepancy in her decision,

---

[2] House says that the ALJ applied the wrong credibility standard by stating that House's statements about her symptoms were "not entirely consistent" with the medical evidence, R. 31, which suggests a "complete consistency" requirement that is itself inconsistent with the governing regulation. *See* 20 C.F.R. § 416.929(a) (ALJ must consider "the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). The court of appeals has called the challenged language "meaningless boilerplate," *Fanta v. Saul*, No. 20-2325, – F. Appx –, 2021 WL 961647, at *3 (7th Cir. Mar. 15, 2021), but it hasn't held that an ALJ's use of the boilerplate requires reversal. The important question is whether the ALJ goes on to explain her reasoning rejecting the claimant's testimony. The ALJ didn't do that in this case, which is why a remand is required.

5

it might provide a basis for questioning House's subjective complaints. But the ALJ didn't rely on or even note any inconsistencies in House's testimony, so the commissioner may not rely on any inconsistencies now. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

The commissioner also cites several cases to downplay the ALJ's duty to explain her reasoning. *Sims v. Barnhart* says that "an ALJ need not address every piece of evidence in his decision." 309 F.3d 424, 429 (7th Cir. 2002). But the problem in this case is broader than a failure to consider a particular piece of evidence; it was a failure to justify the RFC, which is a fundamental requirement.

*Zatz v. Astrue* says that that an ALJ's obligation to explain her conclusions is not "onerous," but the more general point the court made was that the ALJ "need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence." 346 F. App'x 107, 111 (7th Cir. 2009). That's not what happened in this case. Rather, the ALJ concluded that there was evidence that supported House's disability claim, but she then rejected the claim without explaining why. Similarly, *Elder v. Astrue* says that the ALJ satisfies her duty if she "minimally articulates" her reasons. 529 F.3d 408, 415 (7th Cir. 2008). But the ALJ in this case didn't give any reasons to support her finding that House could sit for six hours, so *Elder* isn't helpful.

Finally, *Knox v. Astrue* says that "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." 327 F. App'x 652, 657 (7th Cir. 2009). But as already noted, the ALJ didn't rely on any medical opinions to support her finding that House was capable of sedentary work, so *Knox* isn't helpful either.

*Villano v. Astrue* is more instructive. 556 F.3d 558 (7th Cir. 2009). In that case, the court reversed the ALJ's decision after criticizing his "cursory analysis" on the issue whether the claimant could perform sedentary work *Id.* at 563. As in this case, the ALJ in *Villano* didn't consider the extent to which the claimant's activities of daily living supported his claim, didn't explain why the claimant was able to sit for extended periods despite his impairments, and rejected the claimant's testimony because it wasn't supported by objective evidence. The ALJ's decision in this case is even more vulnerable to challenge because the ALJ in *Villanova* rested his finding on a medical opinion. In this case, the ALJ didn't adopt any of the medical opinions on House's ability to sit. So the court concludes that the ALJ's finding that House could perform sedentary work isn't supported by substantial evidence.

## 2. Stooping

House says that the ALJ failed to resolve a "conflict" between the observation of examining physician Neil Johnson that House was limited to 70 degrees of flexion in her lumbar spine and the ALJ's finding that House was able to stoop occasionally. Dkt. 19, at 10. But House simply assumes that there is a conflict between the ability to stoop occasionally and a 70-degree limitation for lumbar spine flexion. Neither Johnson nor any other expert placed stooping limitations on House. Rather, the only opinion about stooping came from the state agency consultants, who found that House could stoop occasionally, just as the ALJ said. R. 33. And House identifies no other evidentiary basis for greater restrictions than what the ALJ found.

House relies on *Thomas v. Colvin*, 534 F. App'x 546 (7th Cir. 2013), and *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), but both cases are readily distinguishable. In *Thomas*, the ALJ placed great weight on an expert opinion's without resolving an internal

7

inconsistency in the opinion that the claimant was "unable to squat" but could stoop, kneel, crouch, and crawl for one-third of an eight-hour workday. 534 F. App'x at 551. In *Golembiewski*, the ALJ failed to discuss two conflicting medical opinions on the claimant's limited ability to bend. 322 F.3d at 917. Again, no expert in this case gave an opinion that House was limited in her ability to stoop, so *Thomas* and *Golembiewski* aren't instructive.

The court concludes that the ALJ didn't err by failing to include greater restrictions on stooping in the RFC. But because the court is remanding this case on other grounds, the ALJ may wish to consider whether additional expert input is appropriate on this issue.

### 3. Grip strength

House says that it was error for the ALJ not to include any restrictions on grip strength despite Johnson's finding that House had below-normal grip strength in both hands. But, again, neither Johnson nor any other expert offered an opinion that House required restrictions based on limited grip strength, and House offers no other basis for including a grip-strength restriction. Rather, if the ALJ had included such a restriction, she would have been vulnerable to criticism that she was "playing doctor" by interpreting medical records without expert assistance. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

House cites *Herrmann v. Colvin*, but in that case the ALJ mischaracterized an expert's opinion on the claimant's manipulative abilities and found inconsistencies where none existed. 772 F.3d 1110, 1111–12 (7th Cir. 2014). That's not what happened in this case. Again, Johnson gave no opinion on House's handling abilities, and there was no other opinion on which the ALJ could rely to find handling restrictions.

So the court declines to reverse on this ground. But in light of the dearth of expert evidence addressing House's handling abilities, this may be another issue that could benefit from further development on remand.

### 4. Effect of obesity in combination with other impairments

House says that the ALJ failed to adequately discuss the aggregate effects of her obesity and her lumbar spine impairment, as the ALJ was required to do. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). But the ALJ did discuss House's obesity, finding that it contributed to her back pain and supported more postural restrictions. R. 31–32. House says that the ALJ should have explained why her obesity didn't require *more* restrictions.

As already discussed, the ALJ will need to reconsider House's ability to sit for an extended period. That reconsideration should include any sitting limitations caused by House's obesity, alone or in combination with other impairments. But House doesn't point to any specific evidence related to obesity that would have supported greater restrictions, so she isn't entitled to a remand on obesity except as it relates to her sitting limitations. *See Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020).

### 5. Fatigue

House told both her healthcare providers and the ALJ that she was fatigued, that she needed to nap daily for two to three hours, and that being fatigued affected her ability to remember things and to perform her daily activities. *See* Dkt. 19, at 13 (collecting citations to the record). But the ALJ's only discussion of fatigue was a brief mention that she was adding a restriction for working with hazards "due to reports of fatigue." R. 34. The ALJ didn't explain how such a restriction would accommodate the need to take naps or the inability to remember things, and she didn't provide any reasons for discrediting House's fatigue allegations. So this

is another example of the ALJ failing to build a logical bridge between the evidence and her conclusion.

The commissioner defends the ALJ's handling of House's fatigue on three grounds. First, he says that the ALJ's failure to explain why House's fatigue required a hazards restriction is harmless error because removing the restriction would not support House's disability claim. But this misunderstands what House is arguing. House's position isn't that the hazards restrictions is inappropriate; it is that the hazards restrictions isn't sufficient to accommodate House's fatigue.

Second, the commissioner says that House hasn't cited any evidence that her fatigue required restrictions beyond those in the RFC. But that's incorrect. House cited numerous medical records and her own testimony in which she reported her fatigue and described the limitations that the fatigue causes. The commissioner identifies no reason why the ALJ would be entitled to disregard that evidence.

Third, the commissioner says that ALJ "implicitly" considered fatigue in the context of her discussion of the various doctors' reports, citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). In that case, the court concluded that the ALJ's failure to explicitly discuss the claimant's obesity was harmless error because the ALJ relied on medical opinions that did consider the claimant's obesity. *Id.* at 737. But *Prochaska* isn't on point for two reasons. First, the commissioner doesn't point to any medical opinion adopted by the ALJ that considered House's fatigue. Second, the issue in *Prochaska* didn't involve a credibility assessment as in this case, and the commissioner cites no cases in which the principle in *Prochaska* was extended to that context. There are numerous cases holding that the ALJ must explain her reasoning for discrediting the claimant. *See, e.g.*, *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018). So

10

the court declines to remove that obligation based on an assumed reliance on an expert's opinion.

### 6. Lifting and carrying

The ability to perform sedentary work includes the ability to occasionally lift and carry ten pounds. *See* SSR 96-9p; *Diaz*, 55 F.3d at 306. House contends in one sentence of her opening brief that the ALJ failed to explain why she found that House could lift and carry ten pounds, but she drops the issue in her reply brief after the ALJ pointed out that multiple doctors gave that opinion. Dkt. 21, at 3 (citing R. 30). So the court concludes that House abandoned that issue.

## B. Mental limitations

The ALJ included the following restrictions related to House's mental health in the RFC:

- she can understand, remember, and carry out simple instructions;
- she can make occasional work-related decisions;
- she can adapt to occasional changes in the work setting;
- she can occasionally interact with supervisors, co-workers, and the public;
- she is limited to work that requires a mathematical development level no greater than one;
- she cannot meet fast-paced production quotas.

House says that the ALJ failed to incorporate certain findings of an examining psychologist and the state agency psychologists without explaining why.

### 1. Sandra King

King performed a mental status evaluation of House on behalf of the Disability Determination Bureau. Among other things, King found that House had "moderate to severe

difficulties withstanding routine work stress and adapting to change." R. 545. The ALJ gave "partial weight" to King's opinion, reasoning as follows:

> Medical records confirm the claimant has had extensive mental health treatment including inpatient hospitalizations. Mental status examinations have noted the claimant to have a low affect with a mild psychomotor agitation. Further, the claimant's depression questionnaire regularly placed her in a severe category of symptomology. Accordingly, the undersigned concludes that the areas of limitation by Dr. King are generally consistent with the longitudinal record, but a severe compromise in adaptation or stress is not well supported.

R. 34 (citations omitted).

This discussion has the same flaw as the ALJ's discussion regarding House's ability to perform sedentary work. The ALJ summarized all the evidence supporting King's findings but then concluded that a portion of King's opinion "is not well supported." The ALJ cited no contrary evidence and provided no explanation for her conclusion.

The commissioner again combs the ALJ's decision looking for stray remarks that provide support. Specifically, he cites a statement in a different portion of the ALJ's opinion that "treatment records reveal the claimant's symptoms are well controlled with her medication and therapy." R. 32. But the only pieces of evidence the ALJ cited for that proposition were three "depression screenings," in which the House's scores indicated mild to moderate depression. R. 597, 752, 788. In the same screenings, House indicated that it was "somewhat difficult" or "very difficult" for her to work, "take care of t[h]ings at home," and "get along with other people." *Id.* The ALJ didn't connect these screenings to her evaluation of King, and the commissioner doesn't explain how they reveal House's ability to withstand work stress or adapt to change, which seem more closely related to House's anxiety than her depression. So the

court will remand this issue to allow the ALJ to reconsider how much weight King's opinion should be given.

### 2. Consultants' findings

House says that the ALJ failed to account for certain "moderate" limitations found by the state agency psychologists, including: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. R. 95–96.

The above ratings come from a worksheet that this court has discussed in previous decisions. *See, e.g.*, *Garbisch v. Saul*, No. 20-cv-572-jdp, 2021 WL 1248432, at *1 (W.D. Wis. Apr. 5, 2021); *Bolin v. Saul,* No. 20-cv-348-jdp, 2021 WL 567899, at *7–8 (W.D. Wis. Feb. 16, 2021). As noted in those decisions, the worksheet explains that the ratings "help determine the individual's ability to perform sustained work activities," but "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." R. 94. The ALJ cannot ignore the ratings, but she need not discuss them separately if they are adequately encapsulated by the consultant's narrative. *See Apke v. Saul,* 817 F. App'x 252, 258 (7th Cir. 2020); *Varga v. Colvin*, 794 F.3d 809, 811 (7th Cir. 2015).

In this case, the consultants provided the following narrative: "Overall, from a psych perspective, the claimant retains the capacity to perform simple routine tasks with adequate pace, persistence and concentration given the above noted limitations." R. 97. House doesn't contend that the narrative failed to adequately encapsulate the ratings, and she doesn't explain how the ALJ's RFC is inconsistent with the narrative. So the court concludes that House has forfeited this issue by failing to develop it.

**C. Conclusion**

The ALJ erred by failing to explain key aspects of her decision. On remand, the ALJ should reconsider: (1) whether House can perform sedentary work; (2) what restrictions are appropriate for House's fatigue; and (3) how much weight to give to the opinion of Sandra King. In making these determinations, the ALJ should also conduct a new assessment of House's subjective complaints and may wish to consider whether additional expert assistance is needed.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered April 12, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge